UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                                  CRIMINAL ACTION NO. 5:22-cr-00099

LARRY MEADOWS

MEMORANDUM OPINION AND ORDER

Pending is Defendant Larry Meadows' ("Mr. Meadows") Motion for Sentence Reduction or Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed April 17, 2025. [ECF 50]. The matter is ready for adjudication.

I.

On June 15, 2022, Mr. Meadows pled guilty to a single-count Information charging him with possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). [ECF 22, 29]. On June 9, 2023, he was sentenced as a career offender to 151 months imprisonment followed by three years of supervised release. [ECF 43, 45]. Mr. Meadows has been detained since his arrest on February 28, 2022, and is currently incarcerated with a projected release date of September 21, 2031.

On April 17, 2025, Mr. Meadows filed the instant Motion for Sentence Reduction or Compassionate Release. [ECF 50]. He requests his sentence to be reduced to time served. [*Id.* at 4]. He asserts his age and underlying health conditions increase his susceptibility to COVID-19 in prison and when considered alongside the harsh conditions of confinement, these circumstances constitute "extraordinary and compelling circumstances" warranting a modification of his

sentence. [*Id.* at 1–2]. In support of his request, Mr. Meadows indicates "over 50 inmate[s] have died [of] COVID-19," identifies the numerous medications he is currently taking, and presents a plan for release, stating his sister is willing help him with housing and his medical condition. [*Id.* at 2–3]. Mr. Meadows acknowledges his actions "harmed people warranting a serious sentence," but contends his sentence is excessive, disproportionate, and not appropriately reflective of the level of harm caused. [*Id.* at 3]. Finally, Mr. Meadows argues his chances of recidivism are low given both his age and the "numerous courses and programs" he has taken advantage of while incarcerated. [*Id.*].

## II.

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the Bureau of Prisons ("BOP"). The Act permits "incarcerated persons to file their own motions for compassionate release." *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *see also United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022) (clarifying that a "defendant is not required to exhaust his administrative remedies with the BOP *at all* beyond making the initial request for compassionate release").

To grant an inmate's motion for compassionate release or sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant sentencing factors set forth in 18 U.S.C.

§ 3553(a). 18 U.S.C. § 3582(c)(1)(A). The Act "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 500 (2022). However, this broad discretion "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction." *Id.* at 502. Rather, "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id.* at 486–87; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (acknowledging when analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting this analysis.").

In April 2023, the U.S. Sentencing Commission promulgated amendments to the federal sentencing guidelines that took effect on November 1, 2023. Among those amendments was a revision to § 1B1.13(b) which provides any of the following circumstances or combination thereof constitute extraordinary and compelling reasons: (1) the medical circumstances of the defendant, including, *inter alia*, an ongoing infectious disease outbreak at the defendant's facility or an ongoing public health emergency; (2) the defendant's age; (3) the defendant's family circumstances; (4) the defendant is a victim of abuse; (5) other circumstances similar in gravity to those previously listed; or (6) the defendant received an unusually long sentence. *See* U.S.S.G. § 1B1.13(B)(1)–(6).

In determining whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, courts consider whether an inmate has established "the risk of contracting COVID-19 is higher in prison than outside of it, and that his preexisting conditions increase the risk of experiencing a serious or fatal case of the virus." *Davis*, 99 F.4th at 655; *United*

*States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (courts look to "both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility"). District courts have considered the age of the inmate, the documented history and severity of the inmate's health conditions, the proliferation and status of infections in the prison facility, and the presence of comorbidities that increase the risk of serious illness from COVID-19. *United States v. Brady*, No. S2 18 CR. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases); *United States v. Edwards*, 451 F. Supp. 3d 562, 568 (W.D. Va. 2020) (finding "extraordinary and compelling reason" for compassionate release where an immunocompromised inmate with brain cancer was housed at a facility with confirmed COVID-19 cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401–02 (E.D. Pa. 2020) (finding an "extraordinary and compelling reason" for compassionate release based on the inmate's diabetes, high blood pressure, and liver abnormalities, as well as the outbreak at FCI Elkton and the short period remaining on his sentence); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2020) (granting compassionate release due to defendant's diabetes and age in light of the COVID-19 outbreak).[1]

If an inmate demonstrates extraordinary and compelling reasons for release, the court must then consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce the inmate's sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021). These factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the

---

[1] Importantly, each of the cited cases was decided early in COVID-19's spread throughout the United States and before vaccinations were available to inmates. *See Rodriguez*, 451 F. Supp. 3d at 394 (considering the lack of an "approved cure, treatment, or vaccine to prevent [COVID-19]" in its analysis); *Zukerman*, 451 F. Supp. 3d at 333 (citing the defendant's "unique circumstances and the exigency of a rapidly advancing pandemic" as factors favoring release).

defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see High*, 997 F.3d at 187.

### III.

#### A. *Failure to Exhaust Administrative Remedies*

Mr. Meadows has failed to meet the requisite threshold of exhaustion of administrative remedies. The pertinent statute delegates to the Court the authority to reduce a sentence for "extraordinary and compelling reasons" upon "motion of the defendant" but only if at least one of the two threshold requirements outlined in § 3582(c)(1)(A) is met. Our Court of Appeals has acknowledged the administrative exhaustion requirement is "a non-jurisdictional claim-processing rule" that is to "be rigidly applied when invoked by a litigant." *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021); *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010).

Mr. Meadows did not demonstrate that he met either of the two threshold requirements set out in 18 U.S.C. § 3582(c)(1)(A). At the time he filed the instant Motion, Mr. Meadows' initial request to the BOP seeking a sentence reduction had been denied. [ECF 50, Ex. 1 at 2]. No information indicates that an appeal of the Warden's decision was subsequently sought or sought and denied. Administrative exhaustion, however, is not required to move the court for relief. *Muhammad*, 16 F.4th at 131. Nevertheless, Mr. Meadows' Motion does not meet the alternative threshold provided by statute. Mr. Meadows filed his Motion on April 17, 2025 -- before 30 days had lapsed since the filing of his initial request with the BOP. *Id.* (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Mr. Meadows did not exhaust his administrative remedies or wait the requisite 30 days before filing his Motion. Additionally, the United States did not waive or forfeit the non-jurisdictional claims-processing

5

requirement for exhaustion. *Rice*, 617 F.3d at 810. Therefore, the Court must enforce this requirement and dismiss the motion for failure to satisfy the threshold requirements set out in § 3582(c)(1)(A). *See* 18 U.S.C. § 3582.

B. ***Extraordinary and Compelling Reasons for Compassionate Release***

Mr. Meadows asserts he satisfies the U.S.S.G. § 1B1.13(b)(1)(C) criteria for compassionate release inasmuch as his age (73) and health conditions render him vulnerable to death or serious illness should he contract COVID-19 and are incompatible with the conditions of his confinement. [ECF 50 at 2]. Mr. Meadows does not identify any medical conditions he is being treated for with specificity or documentation, but he does identify the numerous medications he is currently taking, including "Lisinopril 5MG Tab, Aspirin 81MG EC Tab, Carvedilo 12MG, Cholecalciferol (Vit D) 1000 unit, Citalopram 20MG Tab, Furosemide 20MG Tab, Atorvastatin 40MG Tab, Metformin HCI 1000MG Tab." [*Id.*]

To the extent the Court may consider the merits of the instant Motion, the Court concludes Mr. Meadows has not shown relief is warranted in this case. The Court acknowledges the medications Mr. Meadows is taking may be indicative of conditions that are serious in nature and may put him at a higher risk of contracting COVID-19. However, as of January 21, 2025, there are no active cases of COVID-19 among the 1,169 inmates at FCI Gilmore. The majority of inmates are fully inoculated, and only one COVID-19 related death is identified.[2] These numbers are not of "extraordinary and compelling" concern and do not indicate Mr. Meadows' "risk of contracting COVID-19 is higher in prison than outside of it." *See Davis*, 99 F.4th at 655. Further,

---

[2] FCI Gilmore is a medium security federal correctional institution with an adjacent minimum security satellite camp located in Glenville, West Virginia. Of the 1,169 inmates accounted for in the most recent statistics, 1112 (or more than 95%) are identified as fully inoculated.

the Court acknowledges Mr. Meadows will be 79 years old at the time of his expected release. Mr. Meadows, however, presents no evidence that any medical deterioration resulting from his age is incompatible with continued incarceration. Considering all circumstances, Mr. Meadows has not met his burden of proving his medical circumstances warrant a sentence reduction.

Mr. Meadows additionally contends his 151-month sentence is "excessive and disproportionate" and "is not appropriately reflective of relative harms." [ECF 50 at 3]. To illustrate the relative harms, Mr. Meadows compares his 151-month sentence for a drug-related offense to the average sentences for murder ("281 months") and for kidnapping ("194 months"). [*Id.*]. Such a comparison may be based on our Court of Appeals' analysis in *United States v. McCoy*. *McCoy*, 981 F.3d at 285 (comparing the length of the defendants' § 924(c) sentences to the "national average" in federal murder cases). Although it remains appropriate to consider the reasoned guidance provided in *McCoy*, the Court must also consider whether an "unusually long" sentence warrants compassionate release under the revised 2023 standard set forth in the sentencing guidelines. U.S.S.G. § 1B1.13(b)(6). That standard requires that the defendant both "received an unusually long sentence and . . . served at least 10 years of the term of imprisonment." *Id.* Mr. Meadows has served less than a third of his total sentence, significantly less than 10 years, and his sentence was within the guideline range.

Additionally, while "studies demonstrate that the risk of recidivism is inversely related to an inmate's age," Mr. Meadows was 70 when he committed the instant offense. *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014). Rehabilitative efforts undertaken by Mr. Meadows are to be commended, but Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification. 28 U.S.C. § 994(t). The Court may, however, account for a defendant's rehabilitative efforts "in

combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). In light of Mr. Meadows' advanced age when he committed the instant offense and his extensive criminal history, his post-sentencing rehabilitation efforts do not outweigh the considerations that led the Court to sentence Mr. Meadows to 151 months imprisonment.

Even if Mr. Meadows could demonstrate extraordinary and compelling reasons for compassionate release, the applicable § 3553(a) factors weigh strongly against a reduction in his sentence. Mr. Meadows is scheduled to be released on September 21, 2031, after he completes his 151-month term of imprisonment for possession with the intent to distribute methamphetamine. Mr. Meadows' offense and offending history show a continued disregard for the criminal justice system. A sentence reduction to time served would not reflect the seriousness of the offense or promote respect for the law. Neither would such a reduction afford adequate deterrence for criminal conduct.

Despite Mr. Meadows' advanced age, medical history, and length of his sentence, the § 3553(a) factors strongly counsel against a sentence reduction. To the extent Mr. Meadows seeks to challenge his conditions of confinement, a motion for compassionate release is not the correct vehicle for filing complaints about prison conditions. *United States v. Cooper*, No. 2:16-CR-00022, 2024 WL 209545, at *2 (S.D.W. Va. May 9, 2024); *United States v. Fleming*, No. 2:18-CR-00141, 2022 WL 5975429, at *4 (S.D.W. Va. Feb. 28, 2022).

### IV.

Accordingly, the Court **DENIES** without prejudice Mr. Meadows' Motion for Compassionate Release [**ECF 50**].

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: July 18, 2025

Frank W. Volk
Chief United States District Judge